## BLACK *v.* THE STATE.

1. A woman sworn as a witness to prove a rape alleged to have been committed upon her may be impeached by proof of bad repute as to lewdness, but not by evidence of specific acts of unchastity.
2. Nor was the withdrawal by the court of the woman's denials of specific acts of lewdness hurtful to the plaintiff in error.
3. While the oft-repeated observation of Lord Hale as to rape cases is entirely proper by way of argument to the jury, it is not a fitting charge by the court.
4. While the court erred in charging, as an abstract proposition, " If, however, a female yields because she is forced by fear of death or by duress, the intercourse, under such circumstances, would be against her will, and the offense would be rape," there being no evidence to justify such charge, the case was sufficiently made out by evidence of actual force ; and this error was not repeated in subsequent charges as to the use of force.
5. The court correctly charged the jury as to the effect which evidence of lewdness on the part of the woman might have, both as to her credibility and as to the probability of her yielding.
6. The court committed no harmful error in charging, or in refusing to charge ; and the jury having found the defendant guilty, upon sufficient evidence, and the trial judge having approved their finding, this court will not interfere.

Argued February 15, — Decided March 29, 1904.

Indictment for rape. Before Judge Gary. Richmond superior court. January 21, 1904.

*George T. Jackson, Austin Branch,* and *A. L. Franklin,* for plaintiff in error. *John C. Hart, attorney-general,* and *J. S. Reynolds, solicitor-general,* contra.

TURNER, J. The plaintiff in error was tried in the superior court of Richmond county, upon an indictment charging him with the crime of rape. The jury found him guilty, with a recommendation of mercy, and he was by the trial judge sentenced to imprisonment in the penitentiary for a term of three years. He made a motion for a new trial on various grounds, which being overruled, he sued out a bill of exceptions to this court. The offense was alleged to have been committed upon one Lucy Wood. According to her story, she was a country girl, about eighteen years old, and went to the city of Augusta in search of employment at the factories. On the night of the 3d of August, 1903, she went, accompanied by the woman with whom she boarded, to a ball which was had at a place in that city called the "Platz," and there got acquainted with the prisoner. At a late hour of

the night, her female friend having left her at that place, she accepted the company of the prisoner, who undertook to guide her to the house at which she stayed. They started off in a direction different from that from which she had come to the ball, but the prisoner assured her that he knew a nearer route. He took her along a path which led to a lonely place, beyond police protection, where there was a street-railroad track, and there made to her improper proposals. She repelled his overtures, but he pulled her down in spite of all the resistance she could make. She made outcry, and a colored man approached and made known his presence, but was warned by the prisoner to leave, which he did. The prisoner then took her a short distance further, when he renewed his effort to have intercourse with her, dragging her down the side of the railroad into a ditch, despite her protests and resistance. She called for help, and attracted the attention of three colored persons who lived in the vicinity, and also of Stephen McCoy, a white man, and Sol Jones, a colored man, who were watching a cornfield some four or five hundred yards away. In response to her cries, they came near to the place where the assault upon her was made; but before they could interfere, the prisoner had accomplished his purpose, notwithstanding she continued to resist him as best she could. Under the protection of McCoy and Jones, to whom she related what had occurred, she returned to the city and repeated to a policeman her account of the crime, and caused the prisoner to be arrested. Both McCoy and Jones, who were called as witnesses in behalf of the State, confirmed the testimony of Lucy Wood as to what took place after they appeared on the scene, and as to the subsequent arrest of the prisoner; and they testified with some detail as to the woman's pleadings and outcries while the prisoner was violating her person; that her clothes seemed to be torn, and that she was apparently offering all the resistance she could.

1. On the trial the defendant offered J. T. Amerson as a witness to prove that he had had connection with this young woman on a certain occasion. The court excluded this evidence, holding that her lewdness could be shown only by proof of general bad character, and not by specific acts. The court did not err in this ruling. In the case of *Camp* v. *State*, 3 *Ga.* 417, which was a case of assault with intent to rape, this court held that "evidence

that the person charged to have been injured is in fact a common prostitute, or evidence of reputation that she is a woman of ill fame, may be submitted to the jury, to impeach her credibility and disprove her statement that the attempt was forcible and against her consent." But the court added (page 422): "It seems that testimony of specific acts of lewdness is not admissible," citing Rex *v.* Clarke, 2 Stark. N. P. 334; Rex *v.* Barker, 3 Car. & P. 467; Rex *v.* Hodgson, Russ & R. C. C. 211; People *v.* Abbott, 19 Wend. 192; 6 Car. & P. 562; 14 Mass. 387; contra, 3 Pick. 194. There are many other American and English cases which seem to hold the same view, though there are some very respectable courts which have held the other way. See 23 Am. & Eng. Enc. L. (2d ed.) 871, and authorities cited in notes 3 and 4; also, Hughes Cr. L. & Proc. § 337, and cases cited. We adopt the view indicated in the Georgia case above referred to, because it seems to be supported by the great weight of authority, and appears to be founded on good reason. If proof of specific acts of lewdness were admitted, it would "not only involve a multitude of collateral issues, but an inquiry into matters as to which the prosecutrix might be wholly unprepared, and so work great injustice." Shirley's Leading Cr. Cas. *57, citing Reg. *v.* Riley, 18 Q. B. Div. 481. Many of the text-books on criminal law are to the same effect. These authorities relate to acts of lewdness committed with persons other than the prisoner. There are many cases holding that the injured woman may be examined as to previous acts of this character with the defendant, on the hypothesis that acts of lewdness committed with him prior to the alleged assault tend strongly to show that she was not in fact forcibly violated on the particular occasion under investigation. The rule relating to the admission of evidence of this nature is thus stated in 3 Gr. Ev. (16th ed.) § 214: " The *character of the prosecutrix for chastity* may also be impeached ; but this must be done by general evidence of her reputation in that respect, and not by evidence of particular instances of unchastity. Nor can she be interrogated as to a criminal connection with any other person, except as to her previous intercourse with the prisoner himself; nor is such evidence of other instances admissible."

2. When, in the present case, the woman alleged to have been wronged was upon the stand, she was interrogated as to specific

acts of lewdness committed with Amerson and other men, but denied that she had ever had criminal intercourse with any of them. Counsel for the defendant insisted that the proffered testimony of Amerson was admissible for the purpose of discrediting or impeaching her as a witness, if not admissible for any other purpose. Thereupon the court withdrew from the jury her testimony as to this matter, stating that he would exclude from the consideration of the jury all testimony relative to specific acts of lewdness. This action on the part of the court is assigned as error in one of the grounds of the motion for a new trial.    We do not think a witness can be impeached by proof of inadmissible matters, merely because the witness has denied these matters; and we accordingly hold that the withdrawal of the testimony of Lucy Wood, in which she denied having had improper relations with other men than the prisoner, was not error as to the prisoner, and that the trial judge rightly excluded the testimony offered of specific acts of lewdness.

3. The defendant also by his counsel asked the court to charge the well-known saying of Lord Hale, that the crime of rape is one which is " easily charged, hard to prove, and harder still to be defended by the accused, be he ever so innocent." And to this saying the defendant added some words equally strong and potent, to a similar effect.    This admonition is proper for the court below always to bear in mind on the trial of a rape case, and also for this court to consider; and it was a proper matter of argument before the jury ; but it should not have been given in charge by the court.    In the case of Crump v. Com., in the Supreme Court of Appeals of Virginia, 23 S. E. 760, that court held that such an instruction to a jury in a rape case was irrelevant and without application, saying, in this connection :   " The oft-repeated observation of Lord Hale, which it was here attempted to put in the form of an instruction, was entirely proper by way of argument to the jury, but not as an independent instruction."    We concur in this view, and hold that the refusal to charge as requested in the present case was not ground for a new trial.

4. In the motion for a new trial the plaintiff in error complained that the court erred in charging as follows :    " If, however, a female yields because she is forced by fear of death or by duress, the intercourse under such circumstances would be against her

will, and the offense would be rape." The assignment of error made upon this charge is, (1) that it does not state a correct principle of law ; and (2) that there was no evidence before the court upon which to base such a charge. An examination of the brief of evidence in this case convinces us that this charge should not have been given, there being no testimony to the effect that she yielded on account of any fear of death. But we have concluded that, as the crime was sufficiently shown to have been committed by force, this erroneous charge does not require the granting of a new trial. See *McGruder* v. *State,* 83 *Ga.* 616 (7). It is also to be observed that, in a subsequent paragraph of the charge, the court instructed the jury as follows : " If you believe beyond a reasonable doubt that that intercourse was had against her will, and that it was accomplished by force, you would be authorized to find the defendant guilty of rape." This latter charge did not contain the erroneous matter. The court further instructed the jury : " It must appear that the carnal knowledge was had against the will of the woman, and was accomplished by force. It must appear that the female offered resistence to the sexual act. The defendant must do more than simply importune ; he must exercise sufficient force to overcome the will of the female." This charge also omitted the objectionable matter.

5. Another complaint made in the motion for a new trial is that the court committed error in charging the jury as follows : " It is no excuse that the woman be lewd or unchaste. The crime of rape may be committed on the most abandoned and depraved strumpet. Yet, in determining whether or not the intercourse was by consent or against the will of the female, the jury should take into consideration all evidence relating to the character of the female for chastity or want of chastity." The complaint is, that this charge restricted the jury as to the purposes for which they could consider the evidence tending to show that the woman alleged to have been raped was lewd, and that the judge should have instructed the jury that such evidence could be considered as affecting her general credibility as a witness. It is to be noted that the foregoing charge is not assailed for what it says, but for what it does not say. It is a sufficient reply to this complaint to observe that the court elsewhere in its charge, while instructing the jury as to the law on the subject of impeachment of witnesses,

expressly informed them that one "mode of impeachment is by proof of general bad character, or by proof of lewdness;" and also, in another paragraph of the charge, instructed the jury that among other pertinent matters to be determined by them was the question "whether or not the female was a woman of good character as to chastity."

6. In the motion for a new trial there is also a general assignment that the verdict is contrary to the evidence and without evidence to support it. In considering this ground of the motion, it is to be stated that there was evidence in the case tending to show that the woman alleged to have been injured was of doubtful purity. While this element of the case was calculated to greatly weaken her testimony, the jury had a right to give to it whatever weight they saw fit, just as they had a right to attach whatever credit they saw fit to the statement of the defendant in denial of the charge brought against him. Moreover it is to be borne in mind that the testimony of this woman was not unsupported. She was strongly corroborated by the witnesses Stephen McCoy and Sol Jones, who had been attracted by her cries, while they were at a cornfield a considerable distance from the scene of the crime, and arrived there before the prisoner had made his departure, though too late to render her assistance in repelling his assault upon her. Even where, in cases of this character, the evidence has not been altogether satisfactory to this court, it has upheld convictions. In the case of *Paschal* v. *State*, 89 *Ga.* 303, wherein the accused was indicted for an assault with intent to rape, this court held: "The evidence, though not altogether satisfactory, warranted the verdict; and as the presiding judge approved the finding by denying the motion for a new trial, the judgment is affirmed." In *Jackson* v. *State*, 91 *Ga.* 323 (4), which was also a case of assault with intent to rape, this court said: "The evidence was barely sufficient to uphold the verdict. It made a case on which the jury might well have doubted whether the accused intended to ravish, but the verdict negatives the existence of any reasonable doubt, and the trial judge was satisfied with the finding." And in the case of *Tolbert* v. *State*, 93 *Ga.* 158, this court declined to set aside a conviction of the accused for the offense of assault with intent to rape, saying: "In view of the evidence, there is ground for grave apprehension that

the little girl who was assaulted may have been mistaken in identifying the accused as the guilty person. But this was a question for the jury, and the trial judge having approved the finding, this court is constrained by law to recognize the doubt as having been rightly solved against the prisoner." We also recognize the decisive authority of the jury in this case, and that of the trial judge, who was primarily invested with the power to review the finding of the jury.

We find no harmful error in the refusals of the court to charge as requested, nor in any of the charges complained of, or omissions to charge. The general charge given by the court sufficiently covered the issues in the case.

*Judgment affirmed.* *All the Justices concur.*